Okay, let's confirm that everybody can hear one another. Judge Clifton. Good morning. Judge Harpool. Good morning. Okay and Ms. Rumlich. Yes. Can you hear us okay? Yes I can. Okay and Ms. Aldana. Yes good morning. Good morning. Okay so our next case for argument is Smatsorabudh. I'm not sure I pronounced that correctly forgive me versus Barr. So Ms. Gromlich. Yes good morning and may it please the court Alexa Gromlich of O'Malvaney and Myers for petitioner Preepitcha Smatsorabudh. I'd like to reserve three minutes of my time for rebuttal. The BIA committed three separate legal errors in denying Ms. Smatsorabudh withholding of removal and release under the Convention Against Torture. First, the BIA and immigration judge submitted a legal error by not engaging in any analysis of whether Ms. Smatsorabudh constitutes a danger to the community. Both this court and the BIA's precedent have established that dangerousness is the essential key that the agency must consider when analyzing whether an immigrant has committed a particularly serious crime that would bar them from withholding of removal. Because of this critical error, this court must reverse the BIA's determination and remand to the agency with instructions to apply the correct legal standard. Additionally, the BIA and immigration judge made two errors in examining whether the record shows Ms. Smatsorabudh is entitled to release under CAP. These two errors separately warrant reversal and remand to the agency. The real-world consequences of the BIA and immigration judge's mistakes here are severe. Ms. Smatsorabudh, a transgender woman from Thailand, will be again experienced physical and sexual abuse and harassment due to her visible gender identity, turning to the first error that was committed. The board impermissibly ignored its own precedent by concluding that Ms. Smatsorabudh committed a particularly serious crime without analyzing whether she poses a danger to the community. The particularly serious crime standard is meant to strike a balance. The government has an obligation under both domestic and international law to not send an immigrant back to a country where their life or freedom would be threatened. Only where an immigrant has committed a particularly serious crime, showing they are a danger to the community, is the government able to deny immigration release. Here, the BIA and immigration judge made no finding that Ms. Smatsorabudh poses a danger to the community that would warrant sending her back to a country where she would face pervasive abuse and harassment. Ms. Gromlich, what should the BIA have done, or the IJ, here to meet their burden as you understand our case law? Yes, so what the BIA and immigration judge should have done is, even if they considered other factors like nature of the conviction, the circumstances and the sentence, they must state why these factors show an individual poses a danger to the community. Here, the immigration judge and BIA merely reiterated the facts and circumstances of Ms. Smatsorabudh's conviction, but didn't have any analysis relating to whether she poses a danger to the community. In fact, both the BIA and... Oh, go ahead. No, I was just going to say, so doesn't our case law say that the agency's not required to make specific findings on danger? The government, in its response brief, misread the law there and said that the BIA doesn't need to consider danger to the community at all. This case law refers to an additional finding that the immigrant will engage in future misconduct after the BIA has made the particularly serious crime determination. The statute itself requires an analysis of danger to the community. So, INA Section 241b3 states that an immigrant may not be deported to a country where their life or freedom is in danger unless the attorney general decides that the immigrant, having been convicted of a final judgment by a particularly serious crime, is a danger to the community of the United States. In fact, in Alphonsus, this court specifically rejected an attempt by the government to suggest that dangerousness is not an essential part of the analysis because it's required by the statute. And to say that dangerousness isn't required would contradict the statutory text that requires an analysis by the BIA and immigration judge of danger to the community. Now, this is Judge Clifton. It seems to me that you may not have quite answered the question that was posed because my understanding of our case law is that the legal standard no longer requires the BIA to engage, quote, in a separate determination to address whether the alien is a danger to the community, close quote. That was from Anaya Ortiz. Is my understanding of the law incorrect? I agree that the law does not require a separate determination regarding whether an immigrant is a danger to the community. Isn't that exactly what you've been talking about? That the lack of such a separate finding or determination is the problem, and if you're not required to come up with a separate finding or determination, then what's the problem here? There's not a separate finding of future misconduct, of the possibility of the alien will engage in future misconduct after the BIA has already made the particularly serious crime determination. This court's precedent continuously in Alphonsus and Delgado has stated that dangerousness remains the essential key or pivotal standard in the particularly serious crime analysis. But there's no requirement that there be any separate analysis or statement on that effect, is there? In Alphonsus, the court specifically reversed and remanded to the BIA because they have not explained why the crime showed that the immigrant posed a danger to the community. That's not a difficult inference to make here, is it? If you've got somebody who's effectively stolen $400,000. Under this court's precedent, crimes that are against the person are more likely to be categorized as particularly serious. More likely isn't enough, though, is it? We have, in fact, held that mail fraud and wire fraud is enough to constitute particularly serious crime. The BIA in its decision specifically cited our court's decision in, I think it's Arbid, and your opening brief cites that, but only as to the standard review. It doesn't explain why our holding in Arbid that fraud was sufficient. Why isn't it sufficient here? First of all, the case in Arbid that's cited by the government is distinguishable because the BIA, first in that case, actually did analyze whether the crime committed showed that the immigrant would constitute a danger to the community. Here, the BIA immigration judge didn't engage in that analysis at all, which is the reversible error here. It's a reversible error only if there's a requirement for a separate statement, and you have yet to point us to anything that requires such a separate statement. So, I don't accede to the reversible error proposition unless you can give me more to work with there, but you can continue. Yes. So, as to your question about the separate statement, there is no requirement that the BIA or immigration judge engage in an analysis of whether an immigrant will be a future danger to the community. So, for instance, examining the risk of recidivism. But in Alphonsus, the court stated that the statutory particularly serious crime provision does not require that. In addition to the determination that the alien has been convicted of a particularly serious crime, the government make an independent  But as I stated, the statute, INA section 241b-3, requires that danger to the community be considered as part of the particularly serious crime analysis. Ms. Gromlich, let me see if I understand your argument. I'm not sure that I do, but let me give it a try. So, as I understand, if there is a finding of a particular serious crime, that's sort of like a presumption that the person is, would be a danger to the community. But I guess what you're talking about is in order, that there has to be some sort of factual analysis that supports that presumption. Yes, that's correct. The immigration judge and the immigration judge and BIA are required to engage in an individual analysis about why the individual poses a danger to the community that would It's not so much the individual, I understand our case law, it's not so much the individual, but it's looking at the nature and circumstances, the facts of the particular crime that the BIA engages with those facts to conclude that they're such that it warrants or justifies the presumption that this particular serious crime means that this individual is a danger to society or whatever. That's how I understand it, but maybe I'm wrong. I'll have to take another look at the language. Yeah, the case law as expressed in Delgado states that a crime is particularly serious if factors like the nature of the conviction, the that a convicted immigrant is a danger to the community. And in matter of Francesco, it states that the four factors that must be considered are nature of the conviction, the circumstances and underlying facts, the sentence, and quote, most importantly, whether the type and circumstances of the crime indicate that an alien will be a danger to the community. And your argument is that the BIA didn't engage in that analysis. That's correct. By not engaging in any analysis of dangerousness, the BIA immigration judge didn't even use the term danger in their decisions. The immigration judge didn't. There was absolutely no mention of danger, which is required under this court precedent. In Alphonsus Delgado Gomez Sanchez, the court has said that dangerousness is the essential key to determine whether an individual conviction was for a particularly serious crime. And the BIA could hypothetically find that a crime that doesn't involve harm to persons like the one here is particularly serious, but it still needs to analyze why the circumstances of that crime show that an immigrant is a danger to the community. There's a reason that the statute uses the words particularly serious crime. If the crime isn't tied to any finding of danger to the community, the BIA could find that essentially any crime warrants sending an immigrant back to a place where they would face violence or persecution. So requiring the BIA to analyze dangerousness is necessary to prevent the particularly serious crime standard from becoming meaningless or overly broad. Did you want to address very quickly the cat claim? Yes. So in addition to the court may reverse the BIA on the particularly serious crime issue alone, the BIA also committed two errors in determining that Ms. Montsoraboud is not entitled to cat release. Specifically, the immigration judge failed to consider all evidence in the record. And the more likely than not be tortured if she's returned to Thailand, making her eligible for cat release. I'm happy to answer questions about these other errors if the panel has any. Why don't you save the balance of your time as you requested for rebuttal? Okay, we submit if the court has no further questions now, we submit that the court should reverse the BIA's determination regarding particularly serious crime and remain with instructions to conduct the analysis under the proper legal standard. Thank you. Okay. We'll hear from the government now. Yes. Good morning, your honor. And may it please the court. Sorrel Dana on behalf of the Attorney General of the United States. As an initial matter because petitioner's application for withholding of removal was denied for a particularly serious crime determination, then this court is limited to reviewing only whether the proper legal standard was applied. Petitioner intends that the incorrect standard was applied because there was no independent dangerousness determination. However, as your honor has identified, there's well-established case law indicating that an independent review is not needed so long as the nature of the crime, the underlying facts, and the sentence imposed indicates or in other cases presumed that the petitioner is a danger to the community. Petitioner relies heavily on the court to support her argument. However, Alfonso's is distinguishable in this case because the court determined that the agency was attempting to modify the Frantescu factors and implement additional factors, which was the agency was essentially stepping outside of its bounds. And in this case, the agency properly adhered to the standard laid out even within Alfonso's that the nature of the crime, the facts, and the dangerousness. In this case, the agency looked to petitioner's sophisticated almost two-year scheme of defrauding her victims in which the petitioner traveled to 12 different states to propel her defeat. She manufactured receipts. She caused over $400,000 in damages and had a lengthy 30-month sentence imposed. Therefore, these factors were enough to presume that the petitioner was a danger. Therefore, a separate analysis was not needed. Regarding petitioner's argument... Could I just, you know, if you have the BIA's opinion handy? Sure, I can pull it up. Yes, I have it. So, in the, I don't know, I guess it's 1, 2, 3rd paragraph is where they discuss pretty particularly... That begins with, in particular? Well, the paragraph preceding it and then that one as well. Okay. Where do they conclude that the underlying facts and circumstances and what show the dangerousness that this particular provision is, issue we're dealing with shows that the crime is a particular... Let me rephrase that. That justifies the presumption that the alien would be a danger to society. Where do we see that they engage in that kind of analysis? Well, they didn't engage in that kind of analysis specifically because this court's case law indicates that that type of analysis is not required. It's an implied or it's an inference that... Well, how do you respond to counsel's argument that what our case law is talking about is you don't have to make specific... The IJ and the BIA don't have to make specific findings that the alien is a result of this crime in the future specifically, that in the future she will engage in specific criminal activity. That is recidivist kind of activity as counsel was referring to. Right, so... Isn't there a distinction between... Let me ask you this. Isn't there a distinction between that kind of analysis and some determination, some assessment of the factual or the predicate factual record that warrants imposition of the presumption? That's the way our case law talks about... Maybe I'm misreading our case law, but... Well, in reference to the future argument, that's referencing that once the petitioner's crime is found to be particularly serious, then the petitioner is found to be a danger to the community in the future. However, so in that case, yes, no independent analysis is needed. But no independent analysis is not needed for the dangerousness of when the crime was committed either pursuant to this case law. So long as the other factors justify or imply or infer or indicate or constitute that the petitioner is a danger to the community. This doesn't negate... This court and within Flores-Vega explicitly stated that the final factor does not trigger an independent analysis. Therefore, the agency properly applied the standard imposed by this court and did not commit a clear error in its analysis. Okay. Do you want to talk about address the cat claim? Yes. Quickly, petitioners did not meet her burden in establishing that she'll more likely to not face torture in the future. Several fears... One of her fears stems from that she fears she'll be harmed by her ex-boyfriend if she's returned to Thailand. However, when the relationship ended in 2003, petitioner remained in Thailand for three years without any incidents of harm. Further, there's been no direct contact with the petitioner and her ex-boyfriend since 2006. So any claims of fear at the hands of her ex-boyfriend is speculative. Regarding the petitioner's argument that the immigration judge not consider the expert's declaration, I would point the court to this court's precedent in Fockery v. Casey in which there's a presumption that the agency reviews all of the evidence unless there's some sort of material disconnect between the immigration judge's observation and conclusion. However, in this case, specifically petitioner contends that the expert's declaration indicates that conditions are worsening where the immigration judge concluded that conditions are improving. And this is somehow evidence that the immigration judge did not consider the expert's declaration. However, on page 9 of the immigration judge's decision, the immigration judge outlines the evidence that's illustrated in the expert's point while not explicitly citing to the expert's declaration. But the immigration judge properly balances the evidence indicating that conditions are worsening and the evidence indicating that conditions are improving and concluded that petitioner did not meet her claim. Therefore, this argument is insufficient to overcome the presumption that this court has laid out within Fockery v. Casey. Ultimately, the petitioner has not provided and not met her burden to establish that she has, she will more likely than not face torture in the future. Let me see if my colleagues have any questions. Okay. I don't see, I don't hear any, so thank you. And we'll hear. Ms. Gromlich, you had a few minutes for rebuttal. Thank you. I want to again emphasize that we are not arguing that there must be a separate determination regarding whether the immigrant will be a future danger to the community. For instance, the BIA and immigration judge aren't required under case law to examine, for instance, the risk of recidivism. Our argument is that the danger to the community is an essential analysis that the immigration judge and BIA must engage in in order to determine whether an immigrant has committed a particularly serious crime. For instance, in Gomez-Sanchez, this court stated that dangerousness remains the essential key to determine whether an individual's conviction was for a particularly serious crime. There just isn't a requirement for a separate determination of dangerousness. It focuses on the likelihood of future seriousness conduct on the part of the alien. In fact, the government here reviewing the BIA's decision conceded that there was not any finding regarding dangerousness as required under this court's precedence. This is important because the BIA and immigration judge must consider dangerousness. The particularly serious crime standard would essentially be rendered meaningless if all the BIA and immigration judge were required to do was repeat the criminal acts and the conviction record without tying it to some danger to the community that would make the crime particularly serious. The government also ignores here that danger to the community is part of the particularly serious crime statute. It's part and baked into the particularly serious crime analysis. And to quickly address Ms. Matsuraba's CAT claim, the most important element in assessing a CAT claim is past persecution. And here Ms. Matsuraba suffered repeated beating, rape, physical abuse because of her gender identity. And police in Thailand didn't help her. In fact, they engaged in the harassment and refused to help her. And there's also significant evidence in the record, including from the expert report submitted by Professor Sinat, that transgender women like Ms. Matsuraba are likely to face future torture and persecution in Thailand because their gender identity is visible. So any progress that's been made for other members of the LGBT community, it's harder for transgender women in Thailand. And there have not been significant improvements. In fact, conditions have been worsening. And Ms. Matsuraba is very likely to suffer repeated physical and sexual abuse if returned to Thailand. We therefore again submit that the court should reverse the BIA's particularly serious crime determination and remand the agency with instructions to apply the correct legal standard. And the court should also reverse the BIA's CAT determination. Thank you. And thank you, counsel. And we appreciate your willingness to work with us under these circumstances. And if I'm not mistaken, Ms. Gromlich, that you did the work on this case pro bono. Yes, that's correct. So we extend our thanks for your willingness to help us out on that score. So with that, the case is submitted and we'll take a short, maybe a three minute recess while we make the decision.
judges: Paez, Clifton, Harpool